ROBERT L. BLAND, Judge.
Claimant Lois Thompson, now a Wave in the armed forces of the United States, was formerly a student at Marshall College *112 in Huntington, Cabell county, West Virginia. She lived on the second floor in the dormitory known as College Hall. She alleges that prior to the summer of I 944 there was a stationary fire escape located on the east end of said College Hall, which extended from the third floor of the building to the ground, and that sometime during the summer of 1943 that part of said fire escape extending from the ground to the second floor was changed so that the metal steps, formerly used in said stationary fire escape were attached to a platform at the upper end and the other end of said metal fire escape was attached to a cable, pulleys and weights so that the one end could be lowered to the ground when in use, and when not in use would, by the said weights, pulleys and cable, be raised in a position horizontal to the ground.
Claimant further alleges that prior to the summer of 1943 said stationary fire escape was used by students, including herself, living in said College Hall as a means of ingress and egress from the second and third floors of said building, and that after the lower section of said fire escape, extending from the ground to the second floor, was changed in the summer of 1943, the students, including herself, living in said College Hall continued to use said fire escape as a means of ingress and egress from said building.
Claimant says that on and prior to April 19, 1944, the room she occupied on the second floor of said College Hall had a doorway leading from said room out onto the platform that extended down to said fire escape landing from the ground to said second floor, and on said 19th day of April, 1944, when she undertook to lower said fire escape from the second floor to the ground so as to permit two other girls who lived in said dormitory to use the fire escape as a means of ingress to said building, one of the cables on said fire escape, due to its defective and insufficient condition, broke, and said fire escape fell to the ground, as a result of which her right femur was broken, and that by reason of said injuries she was necessarily confined in St. Mary’s hospital in the city of Huntington and *113 was forced to and did expend approximately $400.00 for hospital bills, doctor bills, medicine and treatment.
Claimant contends that she has been permanently injured as a result of her said accident and that her injuries and- damages were caused by and through the negligence of the board of control of the state of West Virginia in the manner in which it maintained said equipment at said Marshall College. She seeks an award of $5,000.00 by way of damages.
The state denies all responsibility for the accident and contests the claim.
To establish the merit of her claim Miss Thompson and three other witnesses testified. These witnesses had been students at Marshall College. One of them, Eunice Rogers, was a room-mate of claimant. It was shown that during the school year beginning September, 1943, up to and including April 19, 1944, when her accident happened, claimant occupied a room in suite F-2 on the second floor of College Hall. This room led onto the fire escape extending from the ground to the third floor of the building. Students living on the second floor of the dormitory, desiring to reach the fire escape would have to go through this room. The college library is located a short distance east of the dormitory. A part of the campus and the athletic grounds extend on beyond and east of the library. There is a main entrance to College Hall on Third avenue and another general entrance from Elm street. Referring to the fire escape Miss Thompson explained: “Well, the girls —we all used it to come up and down in front of the library. We never did after hours or before hours: we would come in that way, made a shorter route that way.” It was a shorter and more convenient route in going to and from the library. It would not, however, require but a few moments to use either of the main entrances to the dormitory.
It is necessary for a person on the second floor to go out toward the end of the fire escape in order that the weight of the fire escape would overcome or overbalance the weight con *114 nected to the cable and pulleys and thereby lower it to the ground.
Explaining under what circumstances she was injured, Miss Thompson testified: "Well, there was two girls came down and they yelled for me to let them down the far end of the fire escape. The heavier you are the less you have to go out on it, so I had to walk first about to the end. When I got to the end, why, something happened. The thing went down and the rod that extended that connected the fire escape to the steps and to the cable struck me over the leg when it fell.”
The claimant sustained a fractured femur of the right leg which extended into the kneecap. She was in the hospital for ten weeks, in treatment for four weeks and in a cast for five weeks. She had hospitalization privileges which paid a substantial amount of expenses incurred.
The evidence shows that she had used the fire escape three times on the day of the accident.
It appears that claimant has made substantial recovery. There has been perfect healing of the knee and neither leg is shorter than the other. She has successfully passed the examination required for enlistment in the Waves.
We cannot find from the evidence that the use made by the claimant of a fire escape was with the knowledge or consent of the authorities of the college. It does appear, however, that some of the students did use the fire escape from time to time for purposes of convenience. It was because of the misuse of the stationary fire escape by students that the board of control caused it to be changed to a cantilever or weight lift fire escape.
The contract for this work was awarded by the board of control in February or March 1943 to James J. Weiler & Sons, structural steel contractors of Huntington. The work to be done under this contract contemplated all the fire escapes of Marshall College, including the one on the east side of College Hall, where claimant sustained her accident, changing the sta *115 tionary fire escape there to a cantilever or weight lift escape. After the completion of the work and before approving for payment the invoice submitted by the contractor, college authorities had L. W. Schmidt, architect of Fairmont, West Virginia to make a complete inspection of all the work performed by said contractors, and it was on the basis of the report made of this inspection that payment was made. The report of the inspection of the fire escape on the east side of the dormitory building showed it to be in good condition. Notwithstanding the change made in the fire escape, some of the students continued to use it for purposes of ingress and egress, although such use was not with the consent or approval of college authorities. We think that the board of control and the administrative officials of the college did all that could be reasonably expected to make the fire escape safe for the use for which it was intended, including fire drills. Just how the cable happened to break or what caused it to break on the occasion of claimant's accident is not made clear by the record. In any event it is not believed that the college authorities were in any way responsible for ■ the accident.
Miss Thompson was an adult of good intelligence. She certainly knew that the fire escape was not constructed or intended to be used as a means of ingress and egress. She also knew that there were two main entrances to College Hall, either of which she could' have used with safety. Had she exercised prudence and judgment she would have used these entrances. It may, we think, be safely said that the accident was the result of her folly.
After the conclusion of the introduction of evidence by the claimant and respondent, the attorney for the state moved the court to dismiss the claim upon the ground that it is a claim ■ for an injury arising out of the care or treatment of a person in a state institution, which is excluded by section 14, article 2, chapter 39, Acts of the Legislature, Regular Session, 1945. Said section provides:
"The jurisdiction of the court shall not extend to any claim:
*116 ‘‘3; Arising out of the care or treatment of a person in a state institution.”
Majority members of the court do not think that this provision of the statute excludes the court's jurisdiction of the claim in question. Judge Kunst is of a different opinion. Miss Thompson was not a ward of the state. Her situation demanded no peculiar care or treatment such as would be the case where one is confined in a mental or penal institution.
Upon due consideration of all of the evidence adduced we are of the opinion that the claim asserted against the state by Miss Thompson is not one for which an appropriation of the public revenues should be made by the Legislature.
An award is, therefore, denied and the claim dismissed.